# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ROBERT JOHNSON,**
**D.O.C. #L10847,**

      **Plaintiff,**

**vs.**                              **Case No. 4:20cv410-MW-MAF**

**CAPTAIN A. MASSEY,**
**SERGEANT A. DOWDEN,**
**and OFFICER BROWN,**

      **Defendants.**
**_____/**

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff Robert Johnson, a state prisoner who is proceeding pro se. Plaintiff's complaint alleged that while he was incarcerated at Franklin Correctional Institution, he was forced into a cell to be assaulted by another inmate, subjected to an unnecessary use of chemical agents, and suffered retaliation. ECF No. 1.

After the parties engaged in discovery, Defendants filed a motion for summary judgment. ECF No. 45. Plaintiff was advised of his obligation to

file a response in opposition to that motion, ECF No. 46, and his response,

ECF No. 47, was timely filed.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Thus,

summary judgment is proper "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Here,

the parties were given from April 6, 2021, through August 17, 2021, to

conduct discovery.  ECF Nos. 22, 42.[1]

The "party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,'

---

[1]  The discovery period was extended briefly so Plaintiff could have sufficient time to
review a video (DVD) and other documentary evidence.  ECF No. 42.

which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256,

1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers, 946 F.3d at 1263 (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**The Relevant Rule 56(e) evidence**

### 1.  Plaintiff's Evidence

On the morning of July 4, 2018, Plaintiff was approached by "several unknown inmates" on the recreation yard at Franklin Correctional Institution.  ECF No. 1 at 7.[2]  The inmates told Plaintiff that because he had

---

[2] Statements made by a plaintiff in a verified complaint, sworn response to a motion for summary judgment, or sworn affidavit are properly treated as testimony in ruling on a summary judgment motion.  Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019)

been writing grievances against staff, Plaintiff was making "things hard for

them." *Id.* The inmates told Plaintiff that he had 24 hours to "remove

himself from that institution or else they were going to kill him." *Id.* Plaintiff

alerted his dormitory sergeant to this issue and he was placed in

administrative confinement pending placement in protective management.

*Id.*

On July 28, 2018, Plaintiff was housed in cell A2-113, when

Defendant Dowden approached his cell and told Plaintiff that he "was

getting a cellmate." ECF No. 1 at 8; *see* ECF No. 47 at 47 (Plaintiff's

Declaration). Plaintiff protested and informed Defendant Dowden he was

in "fear for [his] life because members of security were paying & coercing

inmates . . . to threaten & kill him." ECF No. 47 at 47; *see also* ECF No. 1

at 8.[3] Defendant Dowden told Plaintiff that he "did not have a choice" about

getting a cellmate. ECF No. 1 at 8. Plaintiff refused to submit to hand

restraints and asked to speak with the Officer in Charge ["OIC"]. ECF No.

---

(citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (noting that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.")). Plaintiff swore that the statements of fact made in the complaint were true and correct. ECF No. 1 at 21.

[3] In his complaint, Plaintiff alleged that security officers were "coercing gang members" to threaten and kill him. ECF No. 1 at 8.

47 at 47.  Defendant Massey, the OIC, came to Plaintiff's cell along with Defendants Dowden and Brown and ordered Plaintiff to submit to hand restraints.  *Id.*  Plaintiff refused, stating again that he was in fear for his life.  *Id.* at 47-48.  Defendant Massey told Plaintiff that he was getting a cellmate and she did not care if he was in fear for his life.  ECF No. 1 at 8.  Plaintiff said that after Defendant Massey threatened to write him a disciplinary report and administer chemical agents, he submitted to hand restraints but stated that he was still "not consenting to accept a cellmate."  ECF No. 47 at 48.

A short time later, Defendants Massey, Dowden and Brown came to his cell with an unknown white inmate.  ECF No. 1 at 8.  Plaintiff refused to permit the inmate to enter his cell, again telling the Defendants he "was in fear for his life."  ECF No. 47 at 48.  The Defendants departed with the inmate.  ECF No. 1 at 9.

Moments later, Plaintiff said that Defendant Massey returned with Defendant Brown who held a camcorder.  *Id.*  Defendant Massey ordered Plaintiff to cease his "disruptive behavior" and advised that if he did not cease, chemical agents would be used.  ECF No. 47 at 48.  She then directed Defendant Brown to stop the video recording and ordered Plaintiff

once again to submit to hand restraints.  *Id.* at 48-49.  Plaintiff complied

and Defendants Massey and Brown escorted Plaintiff to a holding cell.  *Id.*

at 49.  Once there, Plaintiff said that Defendant Massey told him that she

knew about a lawsuit he had filed against correctional officers at Calhoun

Correctional Institution as well as the "numerous grievances" he had written

against staff at Franklin Correctional Institution.  *Id.*  She "warned" Plaintiff

that she did not "give a damn if [Plaintiff] was in confinement or on the

compound, they were going to get [him] one way or another because [he]

was in their world [and] there was nothing that [he] could do about it."  *Id.*

Defendant Dowden called Plaintiff a "child molestor [sic]" and a

"coward mother f——," and promised that Plaintiff "would never make it out

of prison alive."  *Id.*  Defendant Dowden further told Plaintiff that "they had

paid the inmate that was designated to be [Plaintiff's] cellmate to f— [him]

up" and Plaintiff was "going in the cell with him one way or another."  *Id.* at

50.  Defendant Massey then told Plaintiff that if he wrote a grievance about

their threats, he "might not be alive in the morning."  *Id.*  Defendant Brown

then made a derogatory racial slur to Plaintiff, and they left him in the cell

for approximately one "hour without any drinking water or toilet."  *Id.*

Defendants Dowden and Brown returned and asked Plaintiff if he was "ready to die."  ECF No. 47 at 50.  Plaintiff was ordered to submit to hand restraints, which he did, and Plaintiff was escorted back to his cell.  *Id.*  Plaintiff states that the other inmate had already been placed in the cell.  *Id.*  Again, Plaintiff said he "was not going in the cell with the inmate because [he] was in fear for [his] life."  *Id.*  Defendant Dowden directed the officer in the control station to open the cell door, and Plaintiff "began putting up a little resistance as the Defendants tried to force" him into the cell.  *Id.* at 51.  Defendant Dowden ordered Plaintiff to stop resisting, and then slammed Plaintiff to the floor.  *Id.*  Plaintiff says he continued to resist, so the Defendants grabbed his arms and "forcefully shoved" him into the cell with the other inmate.  *Id.*

The cell door was secured and Plaintiff was ordered to relinquish his hand restraints.  *Id.* at 52.  Plaintiff refused and asked to be removed from the cell or allowed to speak to the OIC.  *Id.*  Plaintiff said he "was refusing to relinquish his hand restraints because he was in fear for his life."  ECF No. 1 at 14.  Defendant Dowden smiled and winked at the other inmate in the cell, then walked away from the cell door.  ECF No. 47 at 52.

Plaintiff said that while his hands were cuffed behind his back, the other inmate was cuffed with his hands in the front.  ECF No. 47 at 52.  As soon as the door was closed, the inmate said, among other things, "I got you now."  *Id.*  He wrapped his hand around Plaintiff's neck and began choking him.  *Id.*  Plaintiff defended himself, kicking the other inmate several times.  *Id.*  After a short struggle, Plaintiff and the inmate stood on opposite sides of the cell in a stand off position until the Defendants returned.  *Id.; see also* ECF No. 1 at 15.

Defendants Massey and Dowden returned with another female officer and ordered the other inmate to "go to a safe corner in the cell."  ECF No. 47 at 52-53.  Defendant Massey then ordered the female officer to spray Plaintiff with chemical agents.  *Id.* at 53.  The other inmate began yelling, "I can't breathe" and kicking the cell door.  *Id.*  Defendant Dowden opened the cell door flap to re-cuff the inmate "behind his back [and] removed him from the cell."  *Id.*  Plaintiff was left inside the cell for approximately ten minutes[4] before the Defendants removed him from the cell.  *Id.*  Plaintiff was taken to a cold water shower, given "somewhat clean clothing," and

---

[4] In the complaint, Plaintiff alleged that he was left inside the cell "for approximately four (4) to five (5) minutes."  ECF No. 1 at 16.

escorted to the nurse's station for examination.  *Id.*  Plaintiff said that he did

not report any injuries to the nurse because he "did not suffer any medical

injuries; however, [Plaintiff] did feel emotionally distressed due to the"

incidents.  *Id.* at 53-54.  After the examination, Plaintiff was escorted back

to his cell and "housed alone."  *Id.* at 54.  Plaintiff has maintained that he

was "not being disorderly or disruptive in any manner."  ECF No. 45-5 at 2

(Ex. E).

### 2.  Defendants' Evidence

Defendant Massey was a Captain, employed at Franklin Correctional

Institution, on July 28, 2018.  ECF No. 45-1 at 1 (Ex. A).  She submitted a

declaration, acknowledging that she had been informed that Plaintiff "was

verbally refusing to have another inmate placed into his cell."  *Id.*  She

arrived at Plaintiff's cell and states that Plaintiff eventually complied and

"was placed in hand restraints, and escorted off the wing, so his new cell

mate could be placed in the cell."  *Id.* at 2.  Defendant Massey said that the

new cell mate was "placed in the cell with his hands cuffed behind his

back."  *Id.*

Plaintiff was brought back to the cell, but "refused to relinquish his

hand restraints."  *Id.*  Staff approached his "cell several times to retrieve the

hand restraints," but Plaintiff "repeatedly refused."  *Id.*  Defendant Massey "then approached the cell and gave [Plaintiff] a final order to relinquish his hand restraints, to which he again refused."  ECF No. 45-1 at 2 (Ex. A). Defendant Massey directed Officer Dana Keith to administer one burst of chemical agent OC spray through the chain breached cell door of A2113, which struck [Plaintiff] in the head and upper torso area."  *Id.*  Plaintiff then complied with "further orders and was removed from the cell" and given a decontamination shower.  *Id.*  Plaintiff was given clean clothing, a post use of force physical examination, and "secured into a decontaminated cell." *Id.* at 3.

Defendant Massey declares that she "never personally used physical force" on the Plaintiff, but authorized and observed the use of chemical agents when Plaintiff refused to relinquish his hand restraints.  *Id.*  She denies seeing another officer threaten Plaintiff, use unnecessary force, or otherwise abuse him.  *Id.*  Further, Defendant Massey denies verbally threatening him, retaliating against him for having filed a lawsuit, or "any other reason."  *Id.*  Following the incident, Plaintiff received a disciplinary report for disobeying an order and was found guilty of that charge.  *Id.*

Defendant Dowden was a Correctional Sergeant at Franklin Correctional Institution on July 28, 2018, and was assigned as a dormitory supervisor.  ECF No. 45-2 at 1 (Ex. B).  Defendant Dowden gave Plaintiff a verbal order to submit to hand restraints, but he did not comply.  *Id.* at 1-2.  Plaintiff complied with Defendant Dowden's second order.  *Id.* at 2.  After Plaintiff was returned to his cell, he "disregarded verbal orders to relinquish his hand restraints, and only complied after chemical agents were applied to his cell."  *Id.*  Defendant Dowden denies using force on Plaintiff and said he "did not observe the use of force by application of chemical agents."  *Id.*  He also never observed any other officer threaten Plaintiff, use unnecessary physical force, or otherwise abuse him.  *Id.*  Defendant Dowden wrote Plaintiff the disciplinary report for disobeying an order, for which he was found guilty.  *Id.* at 2.

Defendant Brown was a Correctional Officer at Franklin Correctional Institution on July 28, 2018.  ECF No. 45-3 at 1 (Ex. C).  Defendant Brown was the operator of the hand held camera which recorded the "incident involving the application of chemical agents" on the Plaintiff.  *Id.* at 1-2.  As he was recording the video, he observed the application of chemical agents which was "reflected in the 'Report of Force Used' concerning that

incident." *Id.* at 2.  Defendant Brown declares that he "did not use any physical force" on Plaintiff, and did not "observe any officer use unnecessary force or abuse" Plaintiff on that date.  *Id.*

Defendants submitted a copy of the "Report of Force Used" which reveals that Defendant Dowden initially counseled Plaintiff prior to the use of force at 6:31 p.m. on July 28, 2018.  ECF No. 45-4 at 1 (Ex. C).  The result of the counseling was "negative," and the use of force was requested by Defendant Massey, and approved by Warden Duvall at 6:53 p.m.  *Id.* Defendant Massey gave Plaintiff the "final order" and warned that if "disruptive behavior continue[d] chemical agents [would] be administered." *Id.*  The "final order" was given at 7:18 p.m.  *Id.*  The record indicates Plaintiff became "disruptive again" at 8:55 p.m., and Officer Keith "administered (3) one second bursts of chemical agents (OC)" at 9:08 p.m. *Id.*  The use of force was witnessed by Defendants Massey and Brown.  *Id.*

Plaintiff was compliant by 9:17 p.m. and he was placed in the shower at 9:20 p.m.  *Id.*  Plaintiff was given clean clothing at 9:43 p.m., given a medical evaluation at 10:06 p.m., and placed in a decontaminated cell at 10:12 p.m.  *Id.*

In addition, Defendants submitted a copy of an incident report which was created based on Plaintiff's allegation in an informal grievance that Defendants did not protect his safety, threatened him, "hurled insults at" him, and physically assaulted him on July 18, 2018.  ECF No. 45-5 at 1 (Ex. E).  Plaintiff complained that he was in fear and could not consent to a cellmate.  *Id.*  He further related the events as alleged in the instant complaint filed in this case.  *Id.* at 1-2; *cf.*  ECF No. 1 at 7-17.  Plaintiff claimed the conduct of the Defendants "was egregious" and they infringed his rights by "failing to safely protect" him and physically abused him.  ECF No. 45-5 at 2.

Lieutenant Cortney Gray reviewed the grievance and the fixed wing video camera.  *Id.* at 1.  Lt. Gray noted that the camera showed the inmate who was placed in Plaintiff's cell had "his hands cuffed behind his back" both when entering the cell, and when he was removed after the use of force.  *Id.* at 1-2.  She notes that Plaintiff refused to relinquish his hand restraints to staff and refused several orders.  *Id.*  Thus, Lt. Gray concluded that Plaintiff's allegation that he was "not being disorderly" was "false as the minimal amount of force necessary was utilized in order to retrieve the

handcuffs from" Plaintiff since he "disobeyed security staffs direct orders to relinquish the hand restraints."  *Id.* at 2.

Defendants also submitted a copy of the "MINS" incident report which reveals that at approximately 8:42 pm on July 29, 2018,[5] Plaintiff "refused to relinquish the hand restraints."  ECF No. 45-6 at 1 (Ex. F).  At approximately 9:11 p.m., Officer Keith administered the chemical agents to Plaintiff's head and upper torso area.  *Id.*  At approximately 9:16 p.m., Plaintiff complied with "all lawful orders" and he was removed from his cell, given a shower, clean clothing, and then "secured back into a decontaminated cell."  *Id.*  The report also noted that Plaintiff would remain in administrative confinement pending a disciplinary charge for "disobeying verbal or written order."  *Id.* at 2.

The disciplinary report charged Plaintiff with not complying with Defendant Dowden's order to submit to hand restraints, and then failing to comply with verbal orders to relinquish his hand restraints.  ECF No. 45-7 (Ex. G).  Plaintiff entered a "not guilty" plea to the charge but was found guilty.  *Id.*  The punishment imposed was 30 days in disciplinary confinement and he was denied canteen for 30 days.  *Id.* at 2.

---

[5] All other evidence reveals the incident occurred on July 28, 2018.

Finally, the "emergency room record" was provided of Plaintiff's post use of force examination.  ECF No. 45-8 at 1 (Ex. H).  Plaintiff denied any injuries and no injuries were noted.  *Id.*  No treatment was given and Plaintiff was advised to notify nursing if his condition changed.  *Id.*

**Analysis**

**1.    Use of Excessive Force**

The motion for summary judgment contends that Defendant Massey cannot be held liable for the use of excessive force when she directed another officer to use chemical agents against Plaintiff when he refused to comply with verbal orders.  ECF No. 45 at 8.  Furthermore, Defendants Dowden and Brown deny using any force against Plaintiff.  *Id.*

The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that a prison official unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The "core judicial inquiry" for this claim uses the standard set forth in Whitley v. Albers, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v.

McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992)

(quoting Whitley, at 320-21, 106 S. Ct. at 1085); *see also* Sconiers, 946

F.3d at 1265 and 1267 (noting that the core inquiry is "the nature of the

force - specifically, whether it was nontrivial and was applied maliciously

and sadistically to cause harm").

     Analysis of an excessive force claim considers: "[1] the need for

application of force, [2] the relationship between that need and the amount

of force used, [3] the threat 'reasonably perceived by the responsible

officials,' ... [4] 'any efforts made to temper the severity of a forceful

response,'" and "[5] [t]he absence of serious injury."  Hudson, 503 U.S. at

7, 112 S. Ct. at 999 (quoting Whitley, 475 U.S. at 321, 106 S. Ct. at 1085)

(quoted in Miles v. Jackson, 757 F. App'x 828, 829 (11th Cir. 2018)); *see*

*also* Kingsley v. Hendrickson, 576 U.S. 389, 402, 135 S. Ct. 2466, 2476,

192 L. Ed. 2d 416 (2015).  Courts must take into account "the 'legitimate

interests that stem from [the government's] need to manage the facility in

which the individual is detained,'" and defer "to 'policies and practices that

in th[e] judgment' of jail officials 'are needed to preserve internal order and

discipline and to maintain institutional security.'"  Kingsley, 576 U.S. at 397,

135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).

Demonstrating an excessive use of force "requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" Sconiers, 946 F.3d at 1265 (quoting Hudson, 503 U.S. at 8). To meet the subjective element, a prisoner must show that the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." 946 F.3d at 1265 (quoting Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)); *see also* Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). The objective component "focuses on whether the official's actions were 'harmful enough,' Hudson, 503 U.S. at 8, 112 S. Ct. 995, or 'sufficiently serious,' Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), to violate the Constitution." 946 F.3d at 1265. Nevertheless, "[u]nder the objective component of an Eighth Amendment claim, the force used, not the injury sustained, is what 'ultimately counts.'" *Id.* at 1267 (quoting Wilkins v. Gaddy, 559 U.S. 34, 38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010)).

As for the subjective element, the undisputed evidence reveals that Plaintiff refused to comply with verbal orders given to relinquish his handcuffs.  Plaintiff admittedly did not allow the officers to remove his handcuffs, telling them that he was afraid to be in the cell with the other inmate.  Nevertheless, what is disputed in this case is whether the chemical agents were used necessarily for a lawful purpose.  It still remains the case that "'where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use'" may be the basis of an Eighth Amendment claim.  Thompson v. Smith, 805 F. App'x 893, 902 (11th Cir. 2020) (citing to Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010)).

It is well established in the Eleventh Circuit that a prisoner's failure to comply with verbal orders of a correctional officer provides a basis for some use of force.  Miles, 757 F. App'x at 830 (finding "there was a need for that force because, as Miles conceded in his deposition, he not only failed to comply with officer Jackson's order to go further into the jail cell, but also evaded Jackson's attempt to get him to comply") (citing Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner]

created a disturbance"); <u>Sconiers</u>, 946 F.3d at 1264 (11th Cir. 2020)

(finding it is permissible for correctional officers to "use pepper-spray or a

takedown to subdue an inmate as long as a valid penological reason

supports the use of such force") (citing <u>Thomas</u>, 614 F.3d at 1301-11, and

<u>Danley v. Allen</u>, 540 F.3d 1298, 1306 (11th Cir. 2008)).

Yet this case presents a twist to the usual rule that force can be used

to compel an inmate to comply with a lawful command.  Plaintiff has

provided evidence that all three Defendants were together in the holding

cell with him when they called him derogatory names, promised him that he

"would never make it out of prison alive," and told him "they had paid the

inmate" who was to be placed in Plaintiff's cell "to f— [him] up."  The

Defendants also told Plaintiff he was going into the cell with that inmate

"one way or another."  If that evidence were believed by a jury, it would be

reasonable to conclude that the use of chemical agents was not for a

lawful, penological purpose but, instead, was "sadistically and maliciously

applied for the very purpose of causing harm."  946 F.3d at 1265.  Plaintiff's

evidence is that the command to relinquish his handcuffs and get into a cell

with another inmate was for the improper purpose of having Plaintiff

assaulted.  The use of chemical agents that followed his refusal was to

facilitate a purpose to harm Plaintiff.  Doing so is subjectively unreasonable and violates Plaintiff's Eighth Amendment rights.

Notably, there is a genuine dispute of material fact as to this claim because Defendants' evidence is that they did not threaten Plaintiff, did not use unnecessary force, did not see others use such force, and they did not otherwise abuse him.  That dispute of fact would preclude granting summary judgment as to this claim, if it were not for the objective component.  The objective component considers whether an official's actions were "harmful enough" or "sufficiently serious" to violate the Constitution.  946 F.3d at 1265.

Analysis of excessive force claims must consider that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. 995); *see also* 946 F.3d at 1265.  Further, "'routine discomforts' and other de minimis uses of physical force do not trigger the 'Eighth Amendment's prohibition on cruel and unusual punishments.'" Hudson, 503 U.S. at 9-10, 112 S. Ct. at 1000 (quotation marks omitted) (quoted in Thompson, 805 F. App'x at 901).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 37-38, 130 S. Ct. 1175.  Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary."

Sconiers, 946 F.3d at 1265-66 (quoting Wilkins, 559 U.S. at 37, 130 S. Ct. 1175 (citation and internal quotation marks omitted)).

The Eleventh Circuit explained in Thompson that "not every use of pepper spray, as a matter of law, gives rise to a 'greater than de minimis' physical injury."  805 F. App'x at 903.  Injuries must be more than trivial or routine discomfort.[6]  *Id.* at 904.

> Mr. Thompson says he was pepper sprayed and left with the chemical agents on his face for approximately twenty minutes; experienced coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to

---

[6] The court reiterated that injuries which "do not meet the de minimis threshold include nausea and vomiting from the smell of raw sewage covering the floor of an isolation cell, Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (per curiam), and a forced dry shave causing "bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain," Harris I, 190 F.3d at 1287 (quotation marks omitted)."  Thompson, 805 F. App'x at 904.  "These injuries, like the 'push or shove' described by the Supreme Court in Hudson, 503 U.S. at 9, 112 S. Ct. at 1000 (quotation marks omitted), attest to a routine discomfort associated with confinement."  805 F. App'x at 904.

> a cell that remained contaminated with pepper-spray residue.
> Mr. Thompson says he continued to suffer for at least an
> additional day until another inmate used his shirt to try to clean
> the pepper-spray residue from the wall of the cell.

Thompson, 805 F. App'x 904-05.  Even while concluding that "spraying

done sadistically, with no penological justification, does not constitute a

'routine discomfort' associated with confinement," the Eleventh Circuit still

reiterated that a plaintiff must demonstrate more than de minimis injury.

Thompson, 805 F. App'x at 904; see also Pierre v. Padgett, 808 F. App'x

838, 845 (11th Cir. 2020).

In Pierre v. Padgett, decided just a month after Thompson, the court

found that plaintiff had not shown "that the pepper spray caused any harm

beyond a temporary burning sensation."  808 F. App'x at 844, n.5.  The

court noted that "[a]bsent some additional injury other than momentary

discomfort, we fail to see how the discomfort associated with being

pepper-sprayed transforms the harm Plaintiff suffered into a more than de

minimis 'physical injury'" sufficient to support an award of damages.  Id.

This case is more like Pierre than Thompson.  In finding that

Thompson's injuries exceeded the de minimis threshold, the court

considered the length of time plaintiff was exposed to the chemical agents

before he was given a shower, and that he was returned to a contaminated cell with pepper-spray residue.  805 F. App'x at 904-05.  The plaintiff alleged difficulty breathing, "prolonged burning sensation" and he suffered for an additional day before the pepper-spray residue was removed from the wall of his cell.  *Id.* at 905.  In such a situation, the use of pepper-spray constituted "excessive force."  *Id.*

Here, Plaintiff has not demonstrated any physical injury, and the mere fact that pepper spray was used on him is not enough to support an Eighth Amendment claim.  805 F. App'x at 903.  There must still be some physical injury that is "harmful enough," Hudson, 503 U.S. at 8, or "sufficiently serious," Wilson, 501 U.S. at 298, to violate the Eighth Amendment.  Plaintiff presented no such evidence.  The undisputed evidence reveals that Plaintiff was removed from his cell between five and ten minutes after the use of chemical agents and he made no complaints of any physical pain or suffering.  He was given a shower, clean clothing, a medical exam where no injury was reported or noted, and he was returned to a cell which had been decontaminated.  There would necessarily be some minor and temporary discomfort associated with the use of the chemical agents, but Plaintiff did not complain about difficulty breathing or

lingering effects from the chemical agents.  Plaintiff did not experience a sufficiently serious injury to support an Eighth Amendment claim.  Although there is a genuine dispute of fact concerning whether the use of chemical agents was justified, Plaintiff has not demonstrated that he suffered more than a *de minimis* injury that should be resolved at trial.[7]  Accordingly, summary judgment should be granted in the Defendants' favor as to this Eighth Amendment claim.

## 2.    Other Claims

Defendants' motion for summary judgment addressed only Plaintiff's Eighth Amendment claim for the use of excessive force.  ECF No. 45. Defendants did not specifically address any of Plaintiff's other claims. Plaintiff's complaint asserted five separate claims: (1) retaliation claim; (2) failure to protect claim; (3) excessive force claim; (4) state law claim for assault and battery; and (5) state law claim for the intentional infliction of emotional distress.  ECF No. 1 at 18.  Should this Report and Recommendation be adopted by the presiding District Judge, it is also

---

[7] Plaintiff demanded a jury trial, *see* ECF No. 1 at 19, as did the Defendants.  ECF No. 21 at 4; ECF No. 35 at 4.

recommended that this case be remanded to separately consider the other four claims brought by Plaintiff.

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 45, be **GRANTED** as to Plaintiff's Eighth Amendment claim for the use of excessive force, but that this case be **REMANDED** for further proceedings on Plaintiff's remaining four claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 7, 2022.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## **NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or**

recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.