UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT JOHNSON,

      Plaintiff,                                Case No.: 4:20cv410-MW-MAF

vs.

CAPTAIN MASSEY, et al.,

      Defendants.

_____/

**DEFENDANTS' SECOND SUPPLEMENTAL
MOTION FOR SUMMARY JUDGMENT[1]**

Defendants MASSEY, BROWN, and DOWDEN, through undersigned counsel, and pursuant to Rule 56(a), Fed. R. Civ. Pro., move for the entry of an Order granting summary judgment in their favor in this cause. As grounds therefore, Defendants allege the following:

**PRELIMINARY STATEMENT**

Plaintiff, an inmate in the custody of the Florida Department of Corrections (hereinafter 'FDC'), currently confined at Charlotte Correctional Institution, initiated this case by filing a civil rights complaint pursuant to 42 U.S.C. §1983.

---

[1] Defendants' initial Motion for Summary Judgment and supplemental motion have both been denied, However, in light of Plaintiff's filing an 'amended complaint' [Doc. 61], which Defendants have 'answered' [Doc. 64], Defendants are herewith filing a 'second supplemental motion for summary judgment' to address anew the issues presented in the amended complaint, and as invited by the Court in its last Order [Doc. 63, pg. 7].

[Doc. 1], and a first amended complaint. [Doc. 61][2] He alleges that when formerly confined at Franklin Correctional Institution (hereinafter 'Franklin'), on July 28, 2018, the Defendants, who were then correctional officials at Franklin, either used excessive and unnecessary force upon him, or failed to protect him from another inmate's assault and force used on him.

The basis of Plaintiff's complaint, is that on July 28, 2018, Defendant Dowden advised him that he would be receiving a cell mate, to which he objected, notifying Dowden that he had been threatened with physical harm by inmates allegedly acting at the behest of security staff, and was in 'fear for his life' by having a cell mate.

Allegedly, Plaintiff reiterated this fear to Defendant Massey, in her role as Captain and Officer in Charge, but she disregarded him and repeated the threats, as well as stating that she was aware of a lawsuit he had filed against correctional officers at another institution.  Furthermore, she allegedly threatened Plaintiff that if he did not cooperate with the placement of another inmate in his cell, and cease his disruptive behavior, chemical agents would be used on him.

Plaintiff alleges a series of actions wherein he cooperated with the placement of hand restraints on him to effectuate the placement of the other inmate in his cell, but finally refused to relinquish the restraints due to 'fear for his life.' He further

---

[2] The only change apparent in the 'first amended complaint' is to the 'relief sought' paragraphs (pg. 19 of both documents).  Plaintiff adds a request for compensatory damages not included in his initial complaint.  Also, he changes the amounts requested for nominal and punitive damages, presumably in light of the Court's previous instructional language.

alleges that Defendants Dowden and Brown at one point used excessive force on him while trying to force him into the cell; that Defendant Massey ordered an unknown officer to spray him with chemical agents; and that he was eventually physically assaulted by his new cellmate, for which he claims Defendants are liable for failure to protect him. [Doc. 61; pgs. 7 through 16].

Defendants have filed their 'answer, etc.' to the 'first amended complaint' [Doc. 64]. Accordingly, the action is now at issue.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

1. On July 28, 2018, Defendant Audrey Massey was employed by the FDC as a Correctional Captain at Franklin [Docs. 45-1; 55-1][3].

2. She does not specifically recall that incident, however, after review of reports concerning the incident, Ms. Massey confirms the following: [Id.]

3. On July 28, 2018, in her supervisory role as Captain, she was informed that inmate Robert Johnson was verbally refusing to have another inmate placed into his cell. [Id.]

4. Ms. Massey arrived at the cell front of cell A2113L, which housed inmate Johnson. [Id.]

5. To her knowledge, Sgt. Andrew Dowden counselled with inmate Johnson in an effort to have him accept his designated cell mate and ordered Johnson to submit

---

[3] References will be to the CM/ECF Doc. No. when they are already previously filed of record.

3

to hand restraints so the new cell mate could be placed in the cell, to which Johnson refused to comply. [Id.]

6. Johnson did eventually comply and was placed in hand restraints, and escorted off the wing, so his new cell mate could be placed in the cell. [Id.]

7. The new cell mate was then placed in the cell with his hands cuffed behind his back. [Id.]

8. Johnson was then placed back in cell A2113 but refused to relinquish his hand restraints. [Id.]

9. Correctional staff approached the cell several times to retrieve the hand restraints from Johnson, but he repeatedly refused. [Id.]

10. Massey then approached the cell and gave Johnson a final order to relinquish his hand restraints, to which he again refused. [Id.]

11. She then directed Officer Dana Keith to administer one burst of chemical agent OC spray through the chain breached cell door of A2113, which struck Johnson in the head and upper torso area. [Id.]

12. At that time, Johnson complied with further orders and was removed from the cell and taken off the wing and received a decontamination shower. [Id.]

13. Johnson also was issued clean clothing and secured into a decontaminated cell. He also received a post use of force physical examination. [Id.]

14. Massey never personally used physical force on Johnson, but authorized and observed only the minimal amount of force (chemical agent) to be used on him, to

4

retrieve the hand restraints from him which he refused to relinquish.  [Id.]

15. She never observed any officer threaten Johnson or otherwise use unnecessary physical force or abuse him.  [Id.]

16. Nor did she ever verbally threaten Johnson, or 'retaliate' against him due to his having filed a lawsuit against any correctional official at any institution, or for any other reason. [Id.]

17. On July 28, 2018, Defendant Andrew Dowden was employed by the FDC as a Correctional Sergeant at Franklin [Docs. 45-2; 55-2].

18. He does not specifically recall that incident, however, after review of reports his only involvement was as follows: [Id.]

19. On that date, Dowden was assigned as a dorm supervisor.  [Id.]

20. At approximately 6:35 PM, he gave Johnson a verbal order to submit to hand restraints, which he did not initially comply with.  [Id.]

21. Only after Dowden gave him a second order, did he comply.  [Id.]

22. After returning Johnson to his assigned cell (A2113), he initially disregarded verbal orders to relinquish his hand restraints, and only complied after chemical agents were applied to his cell.  [Id.]

23. Dowden never personally used force on Johnson on that date, and did not observe the use of force by application of chemical agents by another correctional officer.  [Id.]

24.   However, he did write a 'disciplinary report' charging Robert Johnson with the infraction of 'disobeying order', for which he was found 'guilty' following a disciplinary hearing.  [Docs. 45-2; 45-7]

25.   Dowden never observed any officer threaten Johnson or otherwise use unnecessary physical force or abuse him [Doc. 45-2].

26.   On July 28, 2018, Defendant Brown was employed by the FDC as a Correctional Officer at Franklin [Docs. 45-3; 55-3].

27.  Brown does not specifically recall that incident, however, after review of reports, his knowledge of it, is as follows: [Id.]

28.   On that date, Brown was directed to operate the handheld camera to record an incident involving the application of chemical agents upon inmate Johnson.  [Id.]

29.   In the capacity of recording the video, he did observe the application of chemical agents, as reflected in the 'Report of Force Used' concerning that incident. [Id.]

30.   Brown himself never used force on Johnson on that date, and never observed any officer use unnecessary physical force or abuse Johnson on that date. [Id.]

31.   Plaintiff sustained no physical injuries during the subject incident [Doc. 45-8].

6

## MEMORANDUM OF LAW

### I.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute is present if a reasonable jury could return a verdict in favor of the non-moving party. <u>Allen v. Bd. of Public Educ. for Bibb Cnty</u>., 495 F.3d 1306, 1313 (11th Cir. 2007).  It is only when the moving party meets its initial burden does the burden shift to the non-moving party to demonstrate there are "specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc</u>., 64 F.3d 590, 593-94 (11th Cir. 1995).

When the burden shifts, the non-moving party must show more than "a mere scintilla of evidence to defeat a [properly presented] motion for summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1249 (11th Cir 2004).  They may not rest simply on the allegations presented in the pleadings but are required to set forth facts showing the presence of a genuine issue for trial. <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990).  *See also* <u>Ekokotu v. Federal Exp. Corp.,</u> 408 F. Appx. 331, 333 (11th Cir. 2011) (once the moving party meets its burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor") (quoting <u>Fickling v. U.S.,</u> 507 F.3d 1302, 1304 (11th Cir. 2007)).

The court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Implausible inferences drawn from the record and relied upon by the non-moving party need not proceed to trial. *Cuesta v. School Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002). The court may not accept any version of the facts that are "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

## II. **Defendant Massey is not Liable for Excessive Use of Force During the Subject Incident, as the Force Used was Reasonable and Necessary Under the Circumstances.**

As demonstrated by the referenced exhibits, Defendant Massey, as Correctional Captain was fully authorized and justified to direct another officer to administer chemical agents into Plaintiff's cell, after Plaintiff refused to comply with several verbal orders to cease his disruptive behavior. Once Plaintiff finally

complied, all use of force ceased. She acted within her correctional authority to direct the use of the reasonable and necessary force to maintain order within the correctional setting. [4,5]

In <u>Miles v. Jackson</u>, 757 Fed. Appx. 828 (11th Cir. 2018), the appellate court affirmed an order by the Northern District of Florida granting summary judgment to correctional officers in an excessive force case brought under §1983. And in <u>Reed v. Mitchem</u>, 707 Fed. Appx. 617 (11th Cir. 2017), an inmate alleged that the correctional officer defendant therein used excessive force upon him in violation of the Eighth Amendment during an altercation. On appeal, the appellate court affirmed the lower court's judgment in favor of the correctional officer, and cited the standard applied by the Supreme Court in excessive force cases:

> "'[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' *Hudson*, 503 U.S. at 6-7, 112 S. Ct. 995. (citing *Hudson v. McMillian*, 112 S. Ct. 995 (1992) Certain objective factors may bear on this core inquiry, including '[1] the extent of injury suffered by the inmate…[,] [2] the need for application of force, [3] the relationship between that need and the amount of force used, [4] the threat 'reasonably perceived by the responsible officials,' and [5] 'any efforts made to temper the severity of a forceful response.'…(citing *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). 'From consideration of such factors, 'inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.' (internal citations omitted) … Once it determined Reed was acting in an aggressive manner, as Brock testified, and that Reed made a quick movement in Brock's direction, the court found that the 'evidence support[ed] the conclusion that Brock reasonably perceived a need for action.' We find no error in this conclusion;…" Id. at 621.

---

[4] Defendants Dowden and Brown deny using any force on Plaintiff on July 28, 2018 whatsoever.
[5] Defendant Massey furthermore denies 'retaliating' against Robert Johnson in any manner.

9

In Smith v. Secretary, Department of Corrections, 524 Fed. Appx. 511 (11th Cir. 2013), the Eleventh Circuit affirmed an order granting summary judgment in favor of a correctional officer on an excessive force claim brought by a state prisoner in the Middle District of Florida. The plaintiff's allegations were described as follows:

> "In his Amended Complaint, Smith alleged that Officer Daniels 'twist[ed] [his] arms upwards in the cuffs, while he pressed [him] against the wall…for some minutes' in an 'unprovoked attack' away from surveillance cameras. Smith further alleged that, as a result of the attack, he suffered pain in 'his shoulder and right hand with wrist injury as well; and minor bruises to his eye and a swollen face.' The district court granted summary judgment to Officer Daniels because 'the amount of force at issue…was de minimis' and no reasonable jury could find in favor of [Smith].'……………………………………………………………………..
>
> Taking Smith's account as true, the attack was no more than a de minimis use of force. First, there was a lack of serious injury. The district court properly concluded that Smith's only injury was minimal swelling around the left eye. It is undisputed that Smith had 'minimal swelling' when treated the day after the incident. Smith alleges that he also suffered facial bruising and a fractured wrist as a result of the incident. However, Officer Daniels has met his burden of showing that there is no genuine dispute about the existence of these injuries (no such injuries were caused by the incident), and Smith has not rebutted that showing by designating specific facts beyond the pleadings…. (internal citation omitted). Notes from Smith's medical examination after the incident stated that there was no 'discoloration' and did not reference wrist pain. Also, Smith's medical records show that he made inconsistent statements about when his wrist injury occurred… Thus, the record supports the finding that Smith suffered only the minor injury of facial swelling as a result of the incident. Second, the type of force allegedly used by Officer Daniels (twisting Smith's arm and pressing him against the wall) was 'not of a sort repugnant to the conscience of mankind.' See Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (quotation marks omitted). Instead, it was similar to the 'push or shove' referenced in Wilkins, (citing to Wilkins v. Gaddy, 130 S. Ct. 1175 (2010)), which 'almost certainly fails to state a valid excessive force claim.' Wilkins, 130 S. Ct. at 1178 (quotation marks omitted). Therefore, even taking Smith's version of the events as true, any use of force was de minimis and the district court did not err in concluding that no genuine issue of material fact existed about whether Officer Daniels used excessive force in violation of the Eighth Amendment." (Id. at 512-514).

And in another excessive force case brought by a state prisoner against correctional officers, the Eleventh Circuit affirmed the grant of summary judgment for the defendants. In Howard v. Memnon, 572 Fed. Appx. 692 (11th Cir. 2014), the Eleventh Circuit held as follows:

> "Here, the district court did not err in granting summary judgment in favor of Lt. Newell and Sgt. Crosby regarding Howard's claim of excessive use of force. The defendants presented evidence that force was applied in a good faith effort to maintain or restore discipline, and that the post-force exam showed that he received only a superficial abrasion on his back. Because Howard's accounting of the incident was blatantly contradicted by the record, so that no reasonable jury could have believed it, we cannot adopt that version of the facts for purposes of summary judgment…" (Id. at 695).

See also, Ledlow v. Givens, 500 Fed, Appx. 910 (11th Cir. 2012).

### III. Plaintiff's Claim of Retaliation is Unsubstantiated and Should be Dismissed on Summary Judgment.

The legal standard for a valid First Amendment 'retaliation' claim was stated by the Northern District in Rager v. Augustine, 2017 WL 6627416, (N.D. Fla. 2017), where the Court recognized Eleventh Circuit precedents as follows:

"To prevail on a claim of retaliation, the inmate must establish these elements: (1) His speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. See, *Douglas v. Yates*, 535 F. 3d 1316, 1321 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F. 3d 1247, 1250, 1254 (11th Cir. 2005))." Rager, supra, at 7.

11

Contrary to Plaintiff's unsubstantiated allegations in his Declaration filed in response to Defendants' initial Motion for Summary Judgment, that Defendant Massey advised him that she was aware of his grievances and lawsuit against correctional officers, and that 'they were going to get [him] one way or another' [Doc. 47, pg. 49], Defendants have filed their supplemental Declarations, in which each denies ever physically or verbally retaliating against Plaintiff for his filing grievances or lawsuits against any correctional official [Docs. 55-1; 55-2; 55-3].

### IV. **Defendants were not Deliberately Indifferent to Plaintiff's Need for Protection.**

The Eighth Amendment of the U.S. Constitution forbids 'cruel and unusual punishments.' U.S. Const. Amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (*citing Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994)). "[P]rison officials have a duty… to protect prisoners from violence at the hands of other prisoners." *Id.* "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* (citing *Farmer v. Brennan*, 511 U.S. at 834).

To establish a violation, the prisoner must produce sufficient evidence of (1) a substantial risk of serious harm; (2) defendants' deliberate indifference to that risk;

and (3) causation. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1582 (11th Cir. 1995). For the first element, an officer will be found to have violated an inmate's Eighth Amendment rights when "a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond reasonably to the risk'…" Id. citing Marsh v. Butler Co., Ala., 268 F.3d 1014, 1028 (11th Cir. 2001).

The second element, "deliberate indifference," is a subjective standard having three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir.1999); Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir.2010). Prison officials may avoid liability if (1) "they did not know of the underlying facts indicating a sufficiently substantial danger" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent," or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617–18 (11th Cir. 2007) (quoting Farmer, 511 U.S. at 844, 114 S.Ct. at 1982–83). "[B]efore a defendant's awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature." Carter, 352 F.3d at 1349. Mere negligent failure to protect an inmate from an attack does not create a constitutional violation. Id. at 1350.

Finally, the constitutional violation must be shown to have caused the plaintiff's injury. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1359 (11th Cir. 2003). And there must be some realistic opportunity for a defendant to respond to prevent the illegal conduct. See <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407-08 (11th Cir. 1998).

In the recent case of <u>Milledge v. Florida Department of Corrections Secretary</u>, 760 Fed. Appx. 741 (11th Cir. 2019), a state prisoner alleged that the assistant warden "violated his Eighth Amendment rights by not protecting him after he informed him that his cellmate threatened him and he feared for his life, and then the cellmate attacked and injured him." (Id.)

Summary judgment was granted for the defendant and the prisoner appealed. After reiterating the standard for 'deliberate indifference' in cases of alleged 'failure to protect', the Eleventh Circuit stated:

> "To have subjective knowledge, the plaintiff 'must show more than a generalized awareness of risk…. Mere knowledge of a substantial risk of serious harm 'is insufficient to show deliberate indifference.' Thus, a plaintiff must produce evidence that, with knowledge of the substantial risk of serious harm, the government official knowingly or recklessly 'disregard[ed] that risk by failing to take reasonable measures to abate it.'
>
> **********************************************************************
>
> Here, the district court did not err in granting summary judgment in favor of English. The most the record before us reveals is that Milledge may have informed officials of a single threat directed toward him by his cellmate…..Because 'there must be a 'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference,' …we cannot say that a single threat, on the circumstances of this case, is sufficient by itself to constitute a substantial risk of serious harm."

Milledge, supra, at 743-44. (Internal citations omitted.) Summary judgment for the defendant was accordingly affirmed.

Here the evidence is clear that Plaintiff cannot sustain his burden of showing 'deliberate indifference' to survive summary judgment. While Plaintiff claims in his Declaration filed in opposition to Defendants' initial Motion for Summary Judgment that he 'protested' having a cellmate placed in his cell:

"I protested, advising Defendant Dowden that I was in fear for my life because members of security were paying and coercing inmates of different nationalities to threaten and attempt to kill me…" [Doc. 47, pg. 47], that is not sufficient evidence of 'deliberate inf=difference' in light of the case law cited herein. All the named Defendants have attested that they did not fail to provide Plaintiff protection from any inmate who posed a known risk of danger to Plaintiff. Furthermore, they have attested that they never received any information of a 'verifiable' danger to Plaintiff of being attacked by his new cell mate [Docs. 55-1; 55-2; 55-3].

The above evidence shows that the standard required for liability for deliberate indifference to a need for protection, as set forth in the cases cited previously herein, has not been met by Plaintiff. Accordingly, Defendants are entitled to an Order granting summary judgment in their favor on this issue.

### V. **Plaintiff's State Law Claim for Assault and Battery Should be Dismissed for the Same Reasons Stated as to his §1983 Excessive Force Claim.**

The elements of a Florida state law claim for Assault and Battery are virtually identical to those required to state a claim under 42 U.S.C. § 1983 for excessive use of force, in violation of the Eighth Amendment. Defendants submit that the argument presented in Point II, supra, is equally applicable to Plaintiff's state law claim for assault and battery. It too should be dismissed on summary judgment.

### VI. **Plaintiff's State Law Claim for Intentional Infliction of Emotional Distress Should be Dismissed on Summary Judgment.**

Plaintiff has failed to adequately plead or present sufficient evidence to support his claim of 'intentional infliction of emotional distress' under Florida state law. In Broberg v. Carnival Corporation, 303 F. Supp. 3d 1313 (S.D. Fla. 2017), the District Court cited the elements required to state a valid claim for 'intentional infliction of emotional distress' under Florida state law: "Under Florida law, a plaintiff must plead the following elements in order to state a claim for intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff and (4)

that the conduct complained of caused the plaintiff's severe emotional distress… Under the first prong, a defendant's conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'… 'While there is no exhaustive or concrete list of what of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard.' …Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact…" Broberg, supra, at 1317-18.  (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants submit that Plaintiff's claims should be dismissed, and an Order entered granting summary judgment in their favor herein.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ Joe Belitzky
JOE BELITZKY
Senior Assistant Attorney General
Florida Bar No. 0217301
Office of the Attorney General
The Capitol, PL-01

Tallahassee, Florida 32399-1050  
Telephone: (850) 414-3300  
Facsimile: (850) 488-4872  
Joe.belitzky@myfloridalegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed via CM/ECF and furnished by United States Mail to Robert Johnson #L10847, Charlotte Correctional Institution, 33123 Oil Well Road, Punta Gorda, FL 33955, on June 1, 2022.

                                          /s/ Joe Belitzky  
                                          JOE BELITZKY