**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ROBERT JOHNSON,
D.O.C. #L10847,**

      **Plaintiff,**

**vs.**                        **Case No. 4:20cv410-MW-MAF**

**CAPTAIN A. MASSEY,
SERGEANT A. DOWDEN,
and OFFICER BROWN,**

      **Defendants.**
_____/

## SECOND REPORT AND RECOMMENDATION

In February 2022, a Report and Recommendation, ECF No. 48, was entered on Defendants' first summary judgment motion, ECF No. 45, recommending that the motion be granted as to Plaintiff's Eighth Amendment claim for the use of excessive force. ECF No. 48. It was further recommended that the case be remanded for further proceedings on Plaintiff's remaining claims for retaliation, failure to protect, and state law claims for assault and battery and intentional infliction of emotional

distress which were not addressed in the summary judgment motion. ECF No. 28 at 25-26. In March 2022, the Report and Recommendation was rejected, ECF No. 51, and the case was remanded to consider the effect of the chemical agents on Plaintiff, whether there was a question of material fact, and to consider issues related to Plaintiff's damages.[1]

The parties were given leave to file supplemental motions for summary judgment. ECF No. 53. After doing so, Plaintiff filed a motion requesting leave to file an amended civil rights complaint, ECF No. 56. In particular, Plaintiff sought to add a request for compensatory damages. *Id.* at 2. Defendants filed a response to Plaintiff's motion, stating they had no objection to Plaintiff's request to "modify the punitive and nominal damages" request. ECF No. 59 at 2. However, Defendants opposed Plaintiff's effort to request compensatory damages. *Id.* Plaintiff's motion was ultimately granted and Plaintiff's amended complaint, ECF No. 61, is now the operative pleading.

---

[1] The issue concerning damages has now been resolved with Plaintiff's filing of his amended complaint. ECF No. 61. Previously, Plaintiff had requested nominal and punitive damages, but not compensatory damages. Thus, it was questionable whether Plaintiff was entitled to a jury trial. *See* ECF No. 53.

Plaintiff proceeds against the three named Defendants, each of whom is sued in his or her individual capacity.  ECF No. 61 at 1.  He asserts five claims: (1) retaliation under the First Amendment; (2) failure to protect under the Eighth Amendment; (3) excessive force under the Eighth Amendment; (4) state law claim for assault and battery; and (5) state law claim for intentional infliction of emotional distress.  ECF No. 61 at 18.  As relief, Plaintiff seeks nominal, compensatory, and punitive damages, a declaratory judgment, and injunctive relief.  *Id.* at 19.

Defendants filed an answer to the amended complaint, ECF No. 64, followed by a second supplemental motion for summary judgment, ECF No. 67.  Plaintiff was reminded again of his obligation to respond to the summary judgment motion.  ECF No. 68.  Plaintiff's response, ECF No. 69, was timely filed and the motion is ready for a ruling.[2]

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Thus,

---

[2] Plaintiff's recent notice on inquiry, ECF No. 72, received on January 12, 2023, is hereby acknowledged.

summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Here, the parties were given from April 6, 2021, through August 17, 2021, to conduct discovery.  ECF Nos. 22, 42.[3]

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party must then show though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case."  Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

---

[3]  The discovery period was extended briefly so Plaintiff could have sufficient time to review a video (DVD) and other documentary evidence.  ECF No. 42.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Sconiers v. Lockhart, 946 F.3d 1256, 1262-63 (11th Cir. 2020), and the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers, 946 F.3d at 1263 (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**The Relevant Rule 56(e) Evidence**

### 1. Plaintiff's Evidence

On the morning of July 4, 2018, between 8:30 and 10:00 a.m., Plaintiff was "accosted" by "several unknown inmates" on the recreation yard at Franklin Correctional Institution. ECF No. 61 at 7.[4] Plaintiff reports that the inmates, who were apparently members of different gangs, told Plaintiff that he was making "things hard for them" because Plaintiff had been writing grievances about staff "misconduct." ECF No. 61 at 7. The

---

[4] Statements made by a plaintiff in a verified complaint, sworn response to a motion for summary judgment, or sworn affidavit are properly treated as testimony in ruling on a summary judgment motion. Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (citing United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (noting that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment.")). Plaintiff's amended complaint includes a declaration that the statements of fact were true and correct. ECF No. 61 at 20.

inmates told Plaintiff that he had 24 hours to "remove himself from that institution or else they were going to kill him."  *Id.*  Plaintiff alerted his dormitory sergeant to this issue and he was placed in administrative confinement pending placement in "protective management status."  *Id.;* ECF No. 47 at 47 (Plaintiff's declaration).[5]

On July 28th, Plaintiff was housed in Wing 2 Cell 113 when Defendant Dowden approached his cell between 6:00 - 7:00 p.m. and told Plaintiff that he "was getting a cellmate."  ECF No. 61 at 7-8; ECF No. 47 at 47 (Plaintiff's Declaration).  Plaintiff "protested" and informed Defendant Dowden he was in "fear for [his] life because members of security were paying & coercing inmates . . . to threaten & kill him."  ECF No. 47 at 47; *see also* ECF No. 61 at 8.[6]  Defendant Dowden told Plaintiff that he "did not

---

[5] Plaintiff's declaration, ECF No. 47, was submitted with his response to the first summary judgment motion, ECF No. 45.  In Plaintiff's response to the current summary judgment motion, Plaintiff adopts and incorporates by reference "the background contained in his initial response" to Defendant's summary judgment motion and his "statement of disputed material facts" that were contained in his initial response.  ECF No. 69 at 2 (citing to ECF No. 47 at 2-4).  Plaintiff swore that his response was "true & correct" and may by considered as evidence.  *See* ECF No. 47 at 42.  Plaintiff did not specifically incorporate his prior declaration, ECF No. 47 at 46-54, in his response.  Nevertheless, Rule 55 permits the Court to consider other materials in the record even when not cited by the parties.  Fed. R. Civ. P. 56(c)(3).  In an effort to be as thorough as possible, the prior declaration has been considered.

[6] In his complaint, Plaintiff alleged that security officers were "coercing gang members" to threaten and kill him.  ECF No. 1 at 8.

have a choice" about getting a cellmate.  ECF No. 61 at 8.  Plaintiff asked

to speak with the Officer in Charge ["OIC"] and Defendant Massey came to

Plaintiff's cell.  *Id.*  She told Plaintiff he was getting a cellmate and she did

not care if Plaintiff "was in fear for his life or not."  *Id.*

Approximately ten to fifteen minutes later, Defendants Massey,

Dowden, and Brown returned to Plaintiff's cell with an "unknown white

inmate" and ordered Plaintiff to submit to hand restraints.  ECF No. 61 at 8.

Plaintiff "repeatedly pleaded" to the Defendants, stating again that he was

in fear for his life and could not consent to accepting the cellmate.  *Id.*

Defendant Massey then threatened Plaintiff with a disciplinary report and

the use of chemical agents, causing Plaintiff to submit to hand restraints.

*Id.* at 9.  Restraints were placed on Plaintiff by Defendant Dowden, but

after the cell door was opened, Plaintiff refused to "back away & permit the

inmate to enter the cell with him."  *Id.*  Plaintiff again said he was "in fear for

his life."  *Id.*  Plaintiff's door was secured, his hand restraints removed, and

Defendants escorted the unknown inmate away.  *Id.*

Moments later, Defendant Massey returned to Plaintiff's cell with

Defendant Brown who held a camcorder.  ECF No. 61 at 9.  Defendant

Massey ordered Plaintiff to cease his "disruptive behavior" and advised that

if he did not cease, chemical agents would be used.  *Id.* at 9-10.  She then

directed Defendant Brown to stop the video recording and ordered Plaintiff

once again to submit to hand restraints.  *Id.* at 10.  Plaintiff complied and

Defendants Massey and Brown removed Plaintiff from his cell.  *Id.*

Defendant Dowden then escorted the unknown white inmate into Plaintiff's

cell.  *Id.*  Defendants then escorted Plaintiff to a holding cell outside of

Wing 2.  *Id.*  Once there, and "away from all audio & video recording

devices," Defendants began threatening and insulting Plaintiff.  *Id.* at 10-11.

Defendant Massey told Plaintiff that she knew about a lawsuit he had filed

against correctional officers at Calhoun Correctional Institution as well as

the "numerous grievances" he had written against staff.  *Id.* at 11.  She told

Plaintiff that she did not "give a damn if [Plaintiff] was in confinement or on

the compound, they were going to get him one way or another because he

was in their world [and] there was nothing that he could do about it."  *Id.*

Defendant Dowden called Plaintiff a "child molestor [sic]" and a

"coward mother f——," and promised that Plaintiff "would never make it out

of prison alive."  ECF No. 61 at 11.   Defendant Dowden further told Plaintiff

that "they had paid the white inmate that was being forced into the cell with

him to f— [him] up" and Plaintiff was "going into the cell with that inmate

one way or another." *Id.* Defendant Massey then told Plaintiff that he could "write that up in you want to," adding, "if you be alive in the morning." *Id.* Defendant Brown made a derogatory racial slur to Plaintiff, and they left him in the cell for approximately an hour or hour and a half "without any drinking water or toilet." *Id.* at 12.

Defendants Dowden and Brown returned to the cell between 9:00 and 10:00 p.m. and Plaintiff was asked if he was "ready to die." ECF No. 61 at 12. Plaintiff was ordered to submit to hand restraints, which he did, and Defendants escorted him from the holding cell back to his original cell. *Id.* Plaintiff states that the other inmate had already been placed in the cell. *Id.* Again, Plaintiff said he "was not going in the cell with the unknown white inmate because he was in fear for his life." *Id.* at 12-13. Defendant Dowden directed the officer in the control station to open the cell door, and Plaintiff "began putting up a little resistance as the Defendants tried to force him inside of the cell." *Id.* at 13. Defendant Dowden ordered Plaintiff to stop resisting, and then slammed Plaintiff to the floor. *Id.* Plaintiff says he continued to resist, so Defendants Dowden and Brown grabbed him and "forcefully shoved" him into the cell with the other inmate. *Id.* at 13-14.

Plaintiff said the Defendants bent his wrists "in painful positions" when they shoved him into the cell. ECF No. 47 at 10.

The cell door was secured and Plaintiff was ordered to relinquish his hand restraints. ECF No. 61 at 14. Plaintiff refused and asked to "either be removed from the cell or speak to the OIC." *Id.* Plaintiff said he "was refusing to relinquish his hand restraints because he was in fear for his life." ECF No. 1 at 14. Defendant Dowden "slammed the flap, smiled & winked at the unknown white inmate inside the cell with" him, then walked away from the cell door. *Id.*

Immediately after Defendants left the cell, the inmate told Plaintiff he was "going to kill your f— ass." ECF No. 61 at 15. The inmate then attacked Plaintiff and began choking him. *Id.* Plaintiff said that while his hands were cuffed behind his back, the other inmate was cuffed with his hands in the front "thereby making his attack easy." *Id.* Plaintiff tried to defend himself by kicking the other inmate several times. *Id.* After a short struggle, Plaintiff and the other inmate stood on opposite sides of the cell "in a standoffish position until the Defendants returned." *Id.*

Defendants Massey and Dowden returned with another female officer and ordered the other inmate to "go to a safe corner in the cell." ECF No.

61 at 15.  Once the inmate was in a safe position, Defendant Massey ordered the female officer to spray Plaintiff with chemical agents.  *Id.* at 15-16.[7]  The other inmate began yelling, "I can't breathe" and kicking the cell door.  *Id.* at 16.  Defendant Dowden opened the cell door flap to re-cuff the inmate "behind his back [and] removed him from the cell."  *Id.*  Plaintiff was left inside the cell for approximately four or five minutes before the Defendants removed him from the cell.  *Id.*

Plaintiff was taken to a cold water shower, given clothing, and escorted to the nurse's station for examination.  *Id.* at 16-17.  Plaintiff said that he did "not report any major injuries to the nurse because he didn't have any."  *Id.* at 17; *see also* ECF No. 47 at 53-54 (Plaintiff's declaration).[8]  Plaintiff did, however, assert in his first response to summary judgment that he suffered "physical pain" from the use of the chemical agents, and he pointed to several exhibits (8, 12, and 14) submitted with his response.[9]

---

[7] Plaintiff points out that during this encounter with Defendant Massey, she did not give him an order to relinquish his hand restraints but, instead, ordered the other officer to spray Plaintiff with the OC spray.  ECF No. 47 at 53.

[8] Plaintiff against said he "did not suffer any medical injuries, however, [he] did feel emotionally distressed due to the" events.  ECF No. 47 at 53-54.

[9] Exhibit 8 is the Department's administrative rule on the use of force which describes the chemical agent as an "irritant agent that causes a burning sensation and tearing of the eyes, nasal discharge, and skin and upper respiratory irritation."  ECF No.

ECF No. 47 at 40.  After the nurse examined him, Defendants escorted

Plaintiff back to his original cell where he was "housed alone."  ECF No. 61

at 17.

### 2. Defendants' Evidence[10]

Defendant Audrey Massey was a Captain at Franklin Correctional

Institution on July 28, 2018.  ECF No. 45-1 at 1 (Ex. A).  She submitted a

declaration, acknowledging that she did not specifically recall this incident,

but after reviewing relevant reports, she stated that she had been informed

that Plaintiff "was verbally refusing to have another inmate placed into his

cell."  ECF No. 45-1 at 1-2.  She arrived at Plaintiff's cell after Defendant

Dowden had counseled with the Plaintiff in an attempted to have Plaintiff

accept his cell mate, but Plaintiff refused to comply.  *Id.* at 2.  She states

that Plaintiff eventually complied and "was placed in hand restraints, and

escorted off the wing, so his new cell mate could be placed in the cell."  *Id.*

Defendant Massey said that the new cell mate was "placed in the cell with

his hands cuffed behind his back."  *Id.*  Plaintiff was then returned to the

---

47 at 72.  That does not provide evidence that Plaintiff suffered those conditions.

[10] Defendants' supplemental summary judgment motion did not include any new evidence but cited only to the evidence presented with the first motion, ECF No. 45. ECF No. 67 at 3-6.

cell, but "refused to relinquish his hand restraints." *Id.* Staff approached his "cell several times to retrieve the hand restraints," but Plaintiff "repeatedly refused." *Id.*

Defendant Massey "then approached the cell and gave [Plaintiff] a final order to relinquish his hand restraints, to which he again refused." *Id.* Defendant Massey directed Officer Dana Keith to administer one burst of chemical agent OC spray through the chain breached cell door of A2113, which struck [Plaintiff] in the head and upper torso area." *Id.* Plaintiff then complied with "further orders and was removed from the cell and taken off the wing" and given a decontamination shower. ECF No. 45-1 at 2 (Ex. A). Plaintiff was issued clean clothing, a post use of force physical examination, and "secured into a decontaminated cell." *Id.* at 3.

Defendant Massey declares that she "never personally used physical force" on the Plaintiff, but authorized and observed the use of chemical agents when Plaintiff refused to relinquish his hand restraints. *Id.* She denies observing any officer threaten Plaintiff, use unnecessary force, or otherwise abuse him. *Id.* Further, Defendant Massey denies verbally threatening him, retaliating against him for having filed a lawsuit, or "any

other reason." *Id.* Following the incident, Plaintiff received a disciplinary report for disobeying an order and was found guilty of that charge. *Id.*

Defendant Massey also submitted a supplemental declaration[11] in which she specifically denies failing to provide Plaintiff with "protection from any inmate or staff member who presented a known risk of danger" to him. ECF No. 55-1 (Ex. A). She said that she "never received any information" that Plaintiff "was in verifiable danger of being physically attacked by his new cell mate." *Id.* She further denies threatening Plaintiff, instigating others to assault him, or retaliating against him for filing grievances or lawsuits. *Id.*

Similar to Defendant Massey, Defendant Andrew Dowden did not specifically recall this incident with Plaintiff but after reviewing reports concerning the incident, he also submitted a declaration. ECF No. 45-2 (Ex. B). Defendant Dowden was employed as a Correctional Sergeant at Franklin Correctional Institution and was assigned as a dormitory supervisor on July 28, 2018. *Id.* at 1. On that evening, Defendant Dowden gave Plaintiff a verbal order to submit to hand restraints at approximately

---

[11] The declaration contains a typed signature, not a handwritten signature. ECF No. 55-1 at 2. It is nevertheless accepted. Any deficiency with the form could easily be corrected with personal testimony in a trial or evidentiary hearing.

6:35 p.m.  Plaintiff did not initially comply, but he ultimately complied with Defendant Dowden's second order.  *Id.* at 2.

Defendant Dowden said that after Plaintiff was returned to his assigned cell, he again "disregarded verbal orders to relinquish his hand restraints, and only complied after chemical agents were applied to his cell."  *Id.*  Defendant Dowden denied using any force on Plaintiff and said he "did not observe the use of force by application of chemical agents."  *Id.* He also never observed any officer threaten Plaintiff, use unnecessary physical force, or otherwise abuse him.  *Id.*  Defendant Dowden wrote Plaintiff a disciplinary report for disobeying an order, for which he was found guilty following a disciplinary hearing.  *Id.* at 2.

Defendant Dowden also submitted a supplemental declaration in which he specifically denies failing to provide Plaintiff with "protection from any inmate or staff member who presented a known risk of danger" to him. ECF No. 55-2 (Ex. B).  He likewise said that he "never received any information" that Plaintiff "was in verifiable danger of being physically attacked by his new cell mate."  *Id.*  Finally, Defendant Dowden denied threatening Plaintiff, instigating others to assault him, or retaliating against him for filing grievances or lawsuits.  *Id.*

Defendant Ronderious Brown was a Correctional Officer at Franklin Correctional Institution on July 28, 2018. ECF No. 45-3 at 1 (Ex. C). Similar to Defendants Dowden and Massey, Defendant Brown does not specifically recall the incident but has submitted a declaration after reviewing relevant reports. *Id.* at 1.

Defendant Brown was the operator of the hand held camera which recorded the "incident involving the application of chemical agents" on the Plaintiff. *Id.* at 1-2. While recording the video, Defendant Brown observed the application of chemical agents which was "reflected in the 'Report of Force Used' concerning that incident." *Id.* at 2. Defendant Brown declares that he "did not use any physical force" on Plaintiff on July 28, 2018, and did not "observe any officer use unnecessary physical force or abuse" Plaintiff on that date. *Id.*

Similar to Defendants Massey and Dowden, Defendant Brown also submitted a supplemental declaration. ECF No. 55-3 (Ex. C). He denies failing to provide Plaintiff with protection and contends he "never received any information" that Plaintiff "was in verifiable danger." *Id.* Further, he denied threatening Plaintiff, instigating others to assault him, or retaliating against him for filing grievances or lawsuits. *Id.*

Defendants submitted a copy of the "Report of Force Used" which

shows that Defendant Dowden initially counseled with Plaintiff at 6:31 p.m.

on July 28, 2018, prior to the use of force. ECF No. 45-4 at 1 (Ex. C). The

result of the counseling was "negative," and the use of force was requested

by Defendant Massey, and approved by Warden Duvall, at 6:53 p.m. *Id.*

Defendant Massey gave Plaintiff a "final order" at 7:18 p.m. and warned

him that if his "disruptive behavior" continued, "chemical agents [would] be

administered." *Id.* The record indicates that chemical agents (OC spray)

were obtained by Defendant Massey at 8:30 p.m. *Id.* The weight of the

OC spray when checked out was 438 grams. *Id.*

Plaintiff reportedly became "disruptive again" at 8:55 p.m. ECF No.

45-4 at 1. Officer Dana Keith administered three "one second bursts of

chemical agents" (OC spray)" through the "chain breached cell door,"

hitting Plaintiff "in the head and upper torso areas." *Id.* Officer Keith used

110 grams of OC spray at 9:08 p.m., and Plaintiff was reported to be

compliant by 9:17 p.m. *Id.* The use of force was witnessed by Defendants

Massey and Brown. *Id.*

Three minutes later, at 9:20 p.m., Plaintiff was removed from the cell

and given a shower. ECF No. 45-4 at 1. He was given clean clothing at

9:43 p.m., a medical evaluation at 10:06 p.m., and placed in a decontaminated cell at 10:12 p.m. *Id.* The OC spray canister was weighed by Defendant Massey at 9:45 p.m. and an ending weigh of 328 grams was reported. *Id.* at 2.

Defendants also submitted a copy of an incident report which was created based on Plaintiff's allegation in an informal grievance that Defendants did not protect his safety, threatened him, "hurled insults at" him, and physically assaulted him on July 18, 2018. ECF No. 45-5 at 1 (Ex. E). Plaintiff complained that he was in fear and could not consent to a cellmate. *Id.* He generally related the same events as he alleged in the amended complaint. *Id.* at 1-2; *cf.* ECF No. 61 at 7-17. Plaintiff claimed the conduct of the Defendants "was egregious," in violation of the Rules of Prohibited Conduct, and said they infringed his rights by "failing to safely protect" him and physically abused him. ECF No. 45-5 at 2.

Lieutenant Cortney Gray responded to the allegations made in the grievance by completing an Incident Report on August 7, 2018. *Id.* at 1. Lt. Gray reviewed the fixed wing video camera of the incident at Plaintiff's cell on July 18, 2018. *Id.* Lt. Gray noted that at 19:24 hours, Plaintiff refused to receive a cellmate. *Id.* He was placed in restraints and escorted

off the wing while the other inmate was placed in the cell. *Id.* At 19:33 hours, Plaintiff was placed back in the cell, but he refused "to relinquish his hand restraints to security staff." *Id.* at 1. Staff approached the cell "several times to retrieve" Plaintiff's restraints, but he refused. *Id.* Captain Massey approached the cell at 21:10 hours and gave Plaintiff a final order to relinquish his restraints.[12] *Id.* At 21:16, "the uninvolved inmate was removed from the cell." *Id.* at 1-2. Two minutes later, at 21:18, Plaintiff was removed from the cell and the wing. *Id.* at 2.

Lt. Gray specifically noted in the report that the inmate who was placed in Plaintiff's cell had "his hands cuffed behind his back" both when entering the cell, and when he was removed after the use of force. *Id.* at 1-2. Secondly, Lt. Gray noted that Plaintiff's allegations "against staff were not observed in the video recording."[13] *Id.* at 2. Lt. Gray concluded that Plaintiff's allegation that he was "subjected to Cruel and Unusual Punishment because he was not being disorderly" was "false as the minimal amount of force necessary was utilized in order to retrieve the

---

[12] Chemical agents were administered one minute later. ECF No. 45-6 at 1 (Ex. F).

[13] Notably, neither party submitted the video as evidence. Plaintiff said in his response that he had "substantiated his allegations by presenting specific video evidence," ECF No. 69 at 3, but he did not provide the video to this Court.

handcuffs from" Plaintiff since he "disobeyed security staffs direct orders to relinquish the hand restraints." *Id.*

Defendants also submitted a copy of the "MINS" incident report which reveals that at approximately 8:42 pm on July 29, 2018,[14] Plaintiff "refused to relinquish the hand restraints." ECF No. 45-6 at 1 (Ex. F). At approximately 9:11 p.m., Officer Keith administered the chemical agents to Plaintiff's head and upper torso area. *Id.* At approximately 9:16 p.m., Plaintiff complied with "all lawful orders" and he was removed from his cell, given a shower, clean clothing, and then "secured back into a decontaminated cell." *Id.* The report also noted that Plaintiff would remain in administrative confinement pending a disciplinary charge for "disobeying verbal or written order." *Id.* at 2.

The disciplinary report charged Plaintiff with not complying with Defendant Dowden's order to submit to hand restraints, and then failing to comply with verbal orders to relinquish his hand restraints. ECF No. 45-7 (Ex. G). Plaintiff entered a "not guilty" plea to the charge but was found guilty. *Id.* The punishment imposed was 30 days in disciplinary confinement and he was denied canteen for 30 days. *Id.* at 2.

---

[14] All other evidence reveals the incident occurred on July 28, 2018.

Case No. 4:20cv410-MW-MAF

Finally, the "emergency room record" of Plaintiff's post use of force examination was also provided.  ECF No. 45-8 at 1 (Ex. H).  Plaintiff denied any injuries and no injuries were noted by medical staff.  *Id.*  No treatment was given and Plaintiff was advised to notify nursing if his condition changed.  *Id.*

**Analysis**

**1.    Use of Excessive Force**

Plaintiff alleged an excessive force claim "against all Defendants." ECF No. 61 at 18.  Defendants' second supplemental motion for summary judgment asserts that Defendant Massey "was fully authorized and justified to direct" the use of chemical agents into Plaintiff's cell.  ECF No. 67 at 8. Defendant contends that because force is permissible when a prisoner refuses to comply with orders of correctional staff, her actions were reasonable and necessary to maintain order.  *Id.* at 8-9.

Before addressing the defense presented by Defendant Massey, this claim has been considered as asserted against Defendants Dowden and Brown.  The claim against them is based on a use of physical force and not on the use of chemical agents.

Plaintiff's evidence was that he resisted Defendants' efforts when they were trying to "force him" to go inside his assigned cell with the unknown inmate.  Plaintiff said that both Defendants Dowden and Brown grabbed him, bent his wrists, and "forcefully shoved" him into the cell with the other inmate.  He further said Defendant Dowden slammed him to the ground.

Defendants Dowden and Brown deny using any physical force on the Plaintiff.  Defendants have presented no evidence concerning Plaintiff's alleged refusal to go into his cell.  Rather, Defendants report only that chemical agents were used when Plaintiff refused to relinquish his restraints.

The Eighth Amendment forbids cruel and unusual punishment. Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003).  A claim that a prison official unnecessarily used excessive physical force on a prisoner falls within the Cruel and Unusual Punishments Clause.  The "core judicial inquiry" for this claim uses the standard set forth in Whitley v. Albers, 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson v.

McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992)

(quoting Whitley, 475 U.S. at 320-21, 106 S. Ct. at 1085); *see also*

Sconiers, 946 F.3d at 1265 and 1267 (noting that the core inquiry is "the

nature of the force - specifically, whether it was nontrivial and was applied

maliciously and sadistically to cause harm").

It has been well established for thirty years now that "the use of

excessive physical force against a prisoner may constitute cruel and

unusual punishment [even] when the inmate does not suffer serious injury."

Wilkins v. Gaddy, 559 U.S. 34, 34, 130 S. Ct. 1175, 1176, 175 L. Ed. 2d

995 (2010) (quoting Hudson, 503 U.S. at 4, 112 S. Ct. 995).  The Supreme

Court has held that the "core judicial inquiry" is "not whether a certain

quantum of injury was sustained, but rather 'whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm.'" Hudson, 503 U.S. at 7, 112 S. Ct. 995 (quoted

in Wilkins, 559 U.S. at 37, 130 S. Ct. at 1178).

However, not "every malevolent touch by a prison guard gives rise to

a" civil rights claim.  503 U.S. at 9, 112 S. Ct. 995 (quoted in Wilkins, 559

U.S. at 37, 130 S. Ct. at 1178).  "An inmate who complains of a 'push or

shove' that causes no discernible injury almost certainly fails to state a

valid excessive force claim." 559 U.S. at 38, 130 S. Ct. at 1178 (citations

omitted).

Shoving an inmate in an effort to gain compliance with a command is

not, in and of itself, unconstitutional. Here, Plaintiff admitted that he did not

comply with the command given to him. He alleged that his refusal to go

into the cell with the unknown inmate precipitated the use of physical force

by Defendants Dowden and Brown, followed by the use of chemical agents

as directed by Defendant Massey. Although whether this incident

happened at all is disputed by the parties, it still remains that Plaintiff

identified no injury or harm from the force allegedly used by Defendants

Dowden and Brown. Plaintiff said only that his wrists were bent in a painful

position and he was shoved into the cell. Plaintiff provided no evidence of

a bruise, swelling, or sprained wrist. In this situation, even accepting

Plaintiff's evidence as true, the use of some force was necessary because

Plaintiff admittedly refused to comply with a command. Moreover, the force

used, according to Plaintiff, was not "excessive" - the hallmark of an

"excessive force" claim - because Plaintiff's own evidence shows the force

used was minimal and harmless. Summary judgment should be granted in

favor of Defendants Dowden and Brown on the use of force claim.

Plaintiff's excessive force claim against Defendant Massey is evaluated separately because it is based on the use of chemical agents that were administered against Plaintiff when he refused to comply with Defendant Massey's verbal order.  Defendant Massey did not personally use the force challenged, but she directed application of chemical agents, which is a viable basis for an excessive force claim.

Analysis of an excessive force claim considers: "[1] the need for application of force, [2] the relationship between that need and the amount of force used, [3] the threat 'reasonably perceived by the responsible officials,' ... [4] 'any efforts made to temper the severity of a forceful response,'" and "[5] [t]he absence of serious injury."  Hudson, 503 U.S. at 7, 112 S. Ct. at 999 (quoting Whitley, 475 U.S. at 321, 106 S. Ct. at 1085) (quoted in Miles v. Jackson, 757 F. App'x 828, 829 (11th Cir. 2018)); *see also* Kingsley v. Hendrickson, 576 U.S. 389, 402, 135 S. Ct. 2466, 2476, 192 L. Ed. 2d 416 (2015).  Courts must take into account "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,'" and defer "to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"  Kingsley, 576 U.S. at 397,

135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).

Demonstrating an excessive use of force "requires a prisoner to establish two elements—one subjective and one objective: the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" Sconiers, 946 F.3d at 1265 (quoting Hudson, 503 U.S. at 8). To meet the subjective element, a prisoner must show that the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." 946 F.3d at 1265 (quoting Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)); *see also* Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010). The objective component "focuses on whether the official's actions were 'harmful enough,' Hudson, 503 U.S. at 8, 112 S. Ct. 995, or 'sufficiently serious,' Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), to violate the Constitution." 946 F.3d at 1265. Nevertheless, "[u]nder the objective component of an Eighth Amendment claim, the force used, not the injury sustained, is what 'ultimately counts.'" *Id.* at 1267 (quoting Wilkins, 559 U.S. at 38).

Here, there is evidence that Plaintiff refused to comply with verbal orders given to relinquish his handcuffs. Plaintiff admittedly did not allow the officers to remove his handcuffs, telling them that he was afraid to be in the cell with the other inmate. However, viewing Plaintiff's evidence in the light most favorable to him as the non-moving party, he was not sprayed for failing to comply with an order to relinquish handcuffs. Instead, the use of chemical agents came later - after Plaintiff and his cellmate had an altercation inside the cell. Further, even though there was an altercation in the cell between the two inmates, Plaintiff reported that he was the only one sprayed. Plaintiff said the other inmate was instructed to go to a safe corner in the cell, and the chemical agents were directed only at him. ECF No. 47 at 52-53. The inference is that Plaintiff was sprayed to punish him, not for the purpose of restoring order because, in that situation, both inmates would have been sprayed with chemical agents if it was necessary to break up a cell scuffle.

Plaintiff also provided evidence that all three Defendants were together in the holding cell with him when they called him derogatory names, promised him that he "would never make it out of prison alive," and told him "they had paid the inmate" who was to be placed in Plaintiff's cell

"to f— [him] up." The Defendants told Plaintiff he was going into the cell with that inmate "one way or another." If that evidence were believed by a jury, it would be reasonable to conclude that the use of chemical agents was not for a lawful, penological purpose but, instead, was "sadistically and maliciously applied for the very purpose of causing harm." 946 F.3d at 1265. The inference which can be made in Plaintiff's favor is that when the inmate placed in the cell failed to hurt Plaintiff, chemical agents were used instead. In the Eleventh Circuit, "'where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm," such use may be the basis of an Eighth Amendment claim. Thompson v. Smith, 805 F. App'x 893, 902 (11th Cir. 2020) (citing to Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010)).

Defendants' evidence, however, is that Plaintiff was sprayed for failing to comply with a lawful order to relinquish his handcuffs. A prisoner's failure to comply with verbal orders of a correctional officer provides a basis for a use of force. Miles, 757 F. App'x at 830 (finding "there was a need for that force because, as Miles conceded in his deposition, he not only failed to comply with officer Jackson's order to go further into the jail cell, but also evaded Jackson's attempt to get him to

comply") (citing <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990)

("The need for the use of force [was] established by the undisputed

evidence that [the prisoner] created a disturbance"); <u>Sconiers</u>, 946 F.3d at

1264 (11th Cir. 2020) (finding it is permissible for correctional officers to

"use pepper-spray or a takedown to subdue an inmate as long as a valid

penological reason supports the use of such force") (citing <u>Thomas</u>, 614

F.3d at 1301-11, and <u>Danley v. Allen</u>, 540 F.3d 1298, 1306 (11th Cir.

2008)).

 The evidence on this claim is disputed.  A jury should decide whether

chemical agents were used for a lawful purpose or for the purpose of

causing Plaintiff harm in violation of Plaintiff's Eighth Amendment rights.

 When this issue was originally considered during the first summary

judgment stage of litigation, the dispute of fact was noted but found to be

immaterial because of the objective component which considers whether

an official's actions were "harmful enough" or "sufficiently serious" to violate

the Constitution.  946 F.3d at 1265.  As noted above, not every push or

shove is sufficient to show a constitutional violation, and "routine

discomforts" or "de minimis uses of physical force" are insufficient to violate

the Eighth Amendment.  Hudson, 503 U.S. at 9-10, 112 S. Ct. at 1000

(quotation marks omitted) (quoted in Thompson, 805 F. App'x at 901).

> The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.* at 37-38, 130 S. Ct. 1175.  Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary."

Sconiers, 946 F.3d at 1265-66 (quoting Wilkins, 559 U.S. at 37, 130 S. Ct.

1175 (citation and internal quotation marks omitted)).

It is easy to confuse "the requirements for recovering damages under

the PLRA with the standards for proving an Eighth Amendment

excessive-force claim."  Pierre v. Padgett, 808 F. App'x 838, 843 (11th Cir.

2020).  The failure to show an entitlement to compensatory damages does

not mean a prisoner has failed to support his claim.  A "prisoner need not

prove that he suffered a more than *de minimis* injury to establish an Eighth

Amendment violation."  Wilkins, 559 U.S. at 39–40 (quoted in Pierre, 808 F.

App'x at 843).  Where force is not used to restore order or maintain

discipline but, instead, is used to cause harm, an inmate's Eighth

Amendment rights have been violated.  That is so whether or not a prisoner

has been fortunate enough "to escape without serious injury."  Wilkins, 559

U.S. at 38, 130 S. Ct. at 1179.

It is well recognized that "being pepper sprayed sadistically and

without penological justification is not a routine discomfort of confinement."

Thompson v. Smith, 805 F. App'x 893, 905 (11th Cir. 2020).  A prisoner

presents a valid claim based on such an incident regardless of whether he

shows an entitlement to compensatory or punitive damages.  Accordingly,

because the evidence is disputed as to whether or not the use of chemical

agents on Plaintiff was for a valid penological purpose, the motion for

summary judgment should be denied as to Defendant Massey on Plaintiff's

claim for the unnecessary and excessive use of force.

## 2.    Retaliation

Plaintiff asserted a First Amendment retaliation claim against all

Defendants.  ECF No. 61 at 18.  Defendants deny that claim and contend

Plaintiff's allegations are "unsubstantiated."  ECF No. 67 at 12.  All

Defendants specifically declare that they did not threaten Plaintiff, instigate

others to assault him, or otherwise retaliate against him for filing grievances

or lawsuits.  *Id.*

It is well established that prisoners have a right under the First Amendment to file grievances and petition the government for redress of grievances.  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008); Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir.1989); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  Prison officials violate the First Amendment when they threaten a prisoner for writing a grievance, or issue threats to prevent him from filing a grievance.  Pittman v. Tucker, 213 F. App'x 867, 870-71 (11th Cir. 2007) (threats made to deter inmate's filing of a grievance violates the First Amendment).  The Eleventh Circuit has employed a 3-part "ordinary firmness" test for evaluating a First Amendment retaliation claim. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).  Under this test, a plaintiff must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech.  Pittman v. Tucker, 213 F. App'x 867, 870 (11th Cir. 2007) (citing to Bennett).  "A plaintiff suffers adverse action if the defendant's allegedly retaliatory

conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Bennett, 423 F.3d at 1254.

As to the first element, Plaintiff's right to file a grievance or a lawsuit is a constitutionally protected right.  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) ("an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement"); Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (holding that prison officials are required to "take reasonable measures to guarantee the safety of the inmates").  Here, Plaintiff has provided evidence that he had filed grievances and a lawsuit in state court prior to the incident with the Defendants.  He was also placed in administrative confinement because other inmates told him that his grievance writing was making it hard on them and they were going to kill him if he did not remove himself from that institution.

Plaintiff's evidence also shows that after he was escorted to the holding cell outside of Wing 2, the Defendants, collectively, began threatening him.  Plaintiff said Defendant Massey specifically told him she knew about a lawsuit he had filed against correctional officers at Calhoun

Correctional Institution as well as "numerous grievances" he had written against staff. She told Plaintiff "they were going to get him one way or another . . . ." Defendant Dowden said Plaintiff "would never make it out of prison alive" and said "they had paid the white inmate" that was placed in his cell to "f— him up." Defendant Dowden also told Plaintiff he could "write that up" if he wanted to, if he was "alive in the morning." Defendant Brown was present and made a derogatory racial slur to Plaintiff, but did not specifically threaten him. Later, when Defendants Dowden and Brown returned to take Plaintiff back to his cell, Defendant Dowden asked Plaintiff if he was "ready to die." Construing those comments together, and giving all reasonable inferences to Plaintiff as the non-moving party, Plaintiff has shown that Defendants collectively threatened him, at least in part, because of Plaintiff's prior lawsuit[15] and for filing grievances.

The Court further concludes that Defendants' conduct adversely affected the protected speech, the second part of the 3-part test. Bennett, 423 F.3d at 1250-51. The proper inquiry is whether the challenged conduct "would likely deter a person of ordinary firmness from the exercise of his

---

[15] Plaintiff previously submitted an exhibit which demonstrates he had filed a case in state court in Calhoun County on April 5, 2018. ECF No. 47, Ex. 3 (ECF No. 47at 59).

First Amendment rights." <u>Pittman</u>, 213 F. App'x at 870 ("plaintiff need not show that his own exercise of First Amendment rights have been chilled, but instead a plaintiff can establish an injury if he can show that the retaliatory acts are sufficiently adverse that a jury could find that the acts would chill a person of ordinary firmness from exercising his First Amendment rights"). In this case, Plaintiff's testimony is that correctional officers told him they knew he had filed grievances against staff and a lawsuit. They told him that an inmate had been placed in his cell and was paid to "f— [him] up." ECF No. 47 at 49-50. Under these circumstances, a reasonable person would be deterred from filing further grievances. Finally, there is a causal connection between the Defendants' actions and the adverse effect on speech.

Plaintiff has demonstrated the violation of his First Amendment rights. Because the evidence is disputed as to whether or not Defendants made any of the threats, summary judgment must be denied as to the First Amendment retaliation claim.

## 3. Failure to Protect

Plaintiff's failure to protect claim is also brought against all three Defendants. ECF No. 61 at 18. Defendants contend they were not

deliberately indifferent to Plaintiff's need for protection.  ECF No. 67 at 12.

The basis for that defense is Defendants' denial of any knowledge that

Plaintiff was in danger.  *Id.* at 13-15.

"A prison official violates the Eighth Amendment when a substantial

risk of serious harm, of which the official is subjectively aware, exists and

the official does not respond reasonably to the risk."  Caldwell v. Warden,

FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoted in Brooks v.

Warden, 800 F.3d 1295, 1300 (11th Cir. 2015)).  "To prevail on such a

claim brought under § 1983, the plaintiff must show: (1) a substantial risk of

serious harm; (2) the defendants' deliberate indifference to that risk; and

(3) a causal connection between the defendants' conduct and the Eighth

Amendment violation."  Brooks, 800 F.3d at 1300.

The first element, a substantial risk of serious harm, is evaluated

using an objective standard.  *Id.*  "There must be a 'strong likelihood' of

injury, 'rather than a mere possibility,' before an official's failure to act can

constitute deliberate indifference."  Brooks, 800 F.3d at 1301 (citations

omitted).  Here, Plaintiff has shown that he was placed in administrative

confinement pending a determination of "protective management status"

based on threats from other inmates to harm him.  When confronted with

an unknown inmate being placed in his cell, Plaintiff repeatedly advised Defendants of his fear of assault. Moreover, according to Plaintiff's evidence, Defendants placed the inmate in his cell to harm him and paid him to do so. Thus, Defendants had knowledge that Plaintiff was in danger of assault. When Plaintiff was left in the cell with the other inmate, he was attacked.

Defendants deny instigating any violence against Plaintiff. They deny threatening him or being aware of any information that Plaintiff was in "verifiable danger." Because there is a genuine dispute of material fact on Plaintiff's failure to protect claim, summary judgment cannot be granted.

**4.    State law claim for Assault and Battery**

Plaintiff asserted a state law claim for assault and battery against all named Defendants. ECF No. 61 at 18. Defendants contend that because the elements for a state law claim for assault and battery "are virtually identical to those required to state a claim under 42 U.S.C. § 1983 for excessive use of force," the claim should also "be dismissed on summary judgment." ECF No. 67 at 16.

The crucial question in deciding a state-law assault and battery claim against law enforcement or correctional officers is "whether a reasonable

officer would believe that this level of force is necessary in the situation at hand." Christie ex rel. estate of Christie v. Scott, 923 F. Supp. 2d 1308, 1328–29 (M.D. Fla. 2013) (quoting Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). "If the force used was 'clearly excessive' and not 'reasonable under the circumstances,' City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d DCA 1996), the Defendants may be liable for assault and battery under Florida law." Christie, 923 F. Supp. 2d at 1329; *see also* Cutino v. Untch, 79 F. Supp. 3d 1305, 1315 (S.D. Fla. 2015) (stating that a state law "battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances").

In analyzing the § 1983 excessive force claim against Defendants Dowden and Brown, it was concluded that the force used against the Plaintiff was neither unnecessary or excessive. Because Plaintiff admittedly refused to comply with a command, the use of force was reasonable. Because Plaintiff was unharmed, the force was not excessive. Summary judgment should be granted in favor of Defendants Dowden and Brown on the state law claim of assault and battery.

As for the assault and battery claim brought against Defendant Massey, summary judgment should be denied.  The evidence is disputed as to whether or not the use of chemical agents on Plaintiff was for a valid penological purpose.  Thus, summary judgment cannot be granted as to Plaintiff's state law claim based on this use of force.

**5.    State law claim for Intentional Infliction of Emotional Distress**

Plaintiff brings this claim against all Defendants, and the Defendants contend Plaintiff has "failed to adequately plead or present sufficient evidence to support" this claim.  ECF No. 67 at 16.

"To state a claim under Florida law for intentional infliction of emotional distress, a plaintiff must demonstrate '(1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a civilized community (3) and that causes the victim emotional distress (4) that is severe.'"  Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citations and internal quotation marks omitted) (quoted in Hammer v. Sorensen, 824 F. App'x 689, 694 (11th Cir. 2020)).  Under the "outrageous" element of the claim, it "is not enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or

even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Williams v. City of Minneola, 575 So. 2d 683, 691 (Fla. Dist. Ct. App. 1991) (citation and quotation marks omitted) (quoted in Hammer, 824 F. App'x at 694). Florida law imposes a "high burden" to show conduct that is "outrageous," "atrocious," or "utterly intolerable in a civilized society." Scott v. Walmart, Inc., 528 F. Supp. 3d 1267, 1273 (M.D. Fla. 2021). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"). Garcia v. Carnival Corp., 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012).

An allegation that correctional officers have set up a prisoner to be attacked by other prisoners is disturbing, but it is not outrageous. That is especially true when compared[16] with other cases of even more disturbing conduct, none of which held that the conduct did not rise to the level of intentional infliction of emotional distress:

---

[16] The list of cases were cited in a prior case decided in this Court, Whidden v. Roberts, No. 5:19-CV-80-MCR-MJF, 2020 WL 6566961, at *9 (N.D. Fla. July 28, 2020), report and recommendation adopted, No. 5:19-CV-80-MCR-MJF, 2020 WL 6566322 (N.D. Fla. Nov. 9, 2020).

- <u>Pena v. Marcus</u>, 715 F. App'x 981, 982, 989 (11th Cir. 2017) (holding that sheriff deputies' conduct was not outrageous for purposes of an intentional infliction of emotional distress claim when they broke into plaintiff's home to search it, fractured plaintiff's foot, hit plaintiff in the shoulder with a rifle, and caused physical damage to her home).

- <u>Rubio v. Lopez</u>, 445 F. App'x 170, 175 (11th Cir. 2011) (holding that the plaintiff had failed to allege sufficiently outrageous conduct where a deputy Sheriff hobble-tied him on black asphalt pavement in the sun, resulting in second degree burns to plaintiff's face and chest).

- <u>Christman v. Walsh</u>, 416 F. App'x 841, 846 (11th Cir. 2011) (holding that citing the Christmans for criminal contempt and ordering them to be imprisoned for ten days without a hearing "did not rise to the level of extreme, outrageous conduct that was utterly intolerable in a civilized community").

- <u>Foreman v. City of Port St. Lucie</u>, 294 F. App'x 554, 557-58 (11th Cir. 2008) (holding that police officer's act of pointing an unloaded BB gun at a man's chest and pulling the trigger while wife, who was unaware the gun was not loaded, watched, was "not beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

- <u>Garcia</u>, 838 F. Supp. 2d at 1336, 1339 (allegations that after a "disagreement" with a bartender onboard a cruise ship, seven crew members grabbed Garcia causing her to have a panic attack; they kicked and punched her, threw her to the ground, handcuffed her, dragged her across the floor while restrained, and confined her to her cabin until the following day were insufficient to state a claim for intentional infliction of emotional distress).

- <u>Hill v. Lee Cty. Sheriff's Office</u>, No. 2:11-cv-242-FtM-29SPC, 2012 WL 4356818, at *2, 4 (M.D. Fla. Sept. 24, 2012) (holding

that falsely accusing, arresting, detaining, and prosecuting a
person for a crime he did not commit was not sufficiently
"outrageous" conduct to state a claim for intentional infliction of
emotional distress).

■   Frias v. Demings, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011)
(holding that an officer's conduct was not sufficiently
outrageous where the officer followed an unarmed witness into
her apartment, grabbed her arms, falsely arrested her,
handcuffed her and took her out to his patrol car while she was
wearing only a towel).

■   Vamper v. United Parcel Serv., Inc., 14 F. Supp. 2d 1301,
1306-07 (S.D. Fla. 1998) (holding that the defendants' conduct
was insufficiently outrageous even though the defendants
fabricated a reckless driving charge against the plaintiff in an
effort to terminate him, called him a racial epithet, denied him
pay and other bonuses, suspended and demoted him, and
physically struck him on the ankle).

■   Valdes v. GAB Robins N. Am. Inc., 924 So. 2d 862, 866 (Fla.
3d DCA 2006) (holding that a false report that plaintiff had
committed the crime of insurance fraud—which resulted in the
plaintiff's arrest—"is not the sort of outrageous conduct"
sufficient to state a claim for intentional infliction of emotional
distress).

■   Legrande v. Emmanuel, 889 So. 2d 991, 995 (Fla. 3d DCA
2004) (holding that falsely accusing a minister in front of his
congregation of the crime of theft was not sufficiently
outrageous behavior).

■   Scheller v. Amer. Med. Intern., Inc., 502 So. 2d 1268, 1269,
1271 (Fla. 4th DCA 1987) (holding that the intentional
falsification of documents used in a civil trial in conjunction with
attempts to bribe witnesses to testify falsely in a civil trial were

not sufficiently outrageous to support a claim of intentional infliction of emotional distress).

- ■ <u>Whidden</u>, 2020 WL 6566961, at *9 (plaintiff's claim that defendants made false statements so plaintiff would be unjustifiably arrested, imprisoned, and prosecuted and looked upon by the community as a person of ill repute based on a "wanted poster" were insufficient to state a claim for intentional infliction of emotional distress).

As demonstrated by the cases above, threats or potential harm – and even the infliction of actual harm – is not sufficient by itself to meet the standard to support such a claim.

Accepting Plaintiff's evidence as true that Defendants paid an inmate to assault him and forced him into a cell with the inmate is unacceptable, unprofessional, and unconstitutional. However, that conduct does not rise to the level of such extreme conduct that it meet's Florida's standard to support a claim of intentional infliction of emotional distress. Summary judgment should be granted in Defendants' favor on this claim.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 67, be **GRANTED in part and DENIED in part**. Summary judgment should be granted in favor of Defendants Dowden and Brown on Plaintiff's § 1983 claim for the use of

excessive force and the state law assault and battery claim, and summary judgment should be granted in favor of all Defendants on the state law claim for intentional infliction of emotional distress.  Summary judgment should be denied as to all other claims because there is a genuine dispute of material fact.

**IN CHAMBERS** at Tallahassee, Florida, on January 27, 2023.


 S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**